## JOHN S. DURAND

### *v.*

### HENRIETTA WEIGHTMAN *et al.*

*Filed at Ottawa January 23, 1884.*

1. FRAUDULENT CONVEYANCE—*voluntary settlement good as to subsequent creditors.* A voluntary settlement of property by a husband upon his wife can be assailed only by his existing creditors. A party out of debt can make a settlement of his property on whom he pleases, if done in good faith, and any one dealing with him after such settlement is made a matter of record, will have no right to assail it, or say it was fraudulent as to him.

2. Where a husband conveyed land to his wife as a voluntary settlement for her future maintenance, retaining at the time personal property amply sufficient to discharge all his liabilities, without any intention thereby to defraud any existing or subsequent creditors, the same will be good as against such subsequent creditors.

3. EVIDENCE—*declarations of grantor to defeat grant.* As a general rule a grantor, after he has made and delivered his deed, will not be permitted to disparage his grantee's title by subsequent declarations made in the absence of the grantee.

4. DEED—*takes no effect until delivered.* Where a party took a deed made by her to her son, and a deed from the son to his father, as soon as prepared and acknowledged, neither of which was ever delivered to either her son or husband, but were retained by her with the express understanding that they were not to be delivered unless she died before her husband, and the husband died before the wife, it was *held,* that the deeds never took effect so as to vest the title in the grantees, or either of them.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Kane county; the Hon. CLARK W. UPTON, Judge, presiding.

Mr. J. W. RANSTEAD, and Mr. D. B. SHERWOOD, for the appellant:

In the case of a voluntary conveyance the intent of the grantor, and not that of the grantee, is the one which governs the question of its validity. *Mohawk Bank* v. *Atwater,* 2 Paige, 54.

Where the facts show an intent to defraud antecedent creditors, such proof is *prima facie* evidence of an intent to defraud subsequent creditors. Bump on Fraudulent Conveyances, 414.

If the grantee has participated in the fraudulent purpose evincing a conspiracy to defraud, the declarations of the grantor, made after the conveyance is made, are competent evidence. *Jones* v. *King*, 86 Ill. 227; 2 Phillips on Evidence, note, 180; Cowen & Hill's notes, p. 177; also, note 452, p. 602, note 481, p. 652; Bump on Fraudulent Conveyances, 567, 569.

A subsequent creditor may attack a voluntary conveyance made with intent to defraud preëxisting creditors. *Jones* v. *King*, 86 Ill. 227; *Griffin* v. *First National Bank*, 74 id. 259; *Hook* v. *Mowre*, 17 Iowa, 197; *Damon* v. *Bryant*, 19 Mass. 41; *King* v. *Wilcox*, 11 Paige, 589.

A delivery of a deed may be made by such words and acts as indicate a present intention to part with the title. *LeClure* v. *Colcough*, 17 Ala. 89; *Mullett* v. *Paige*, 8 Ind. 364; *Stevens* v. *Hatch*, 6 Minn. 64.

It is sufficient if there be an intention of the mind to treat the instrument as a deed. *Byers* v. *McClannahan*, 6 Gill & J. 250; *Stuart* v. *Redditt*, 3 Md. 67; *Crawford* v. *Bertheof*, 1 N. J. Eq. 458; *Thompson* v. *Hammond*, 1 Edw. (N. Y.) 497.

A formal delivery of a deed is not necessary, and though left in the possession of the grantor it will pass the property, if it appears it was executed with such intent. *Walker* v. *Walker*, 42 Ill. 311; *Gunnell* v. *Cockerill*, 84 id. 319; *Farrar* v. *Bridges*, 5 Humph. 44; *Warren* v. *Sweet*, 31 N. H. 332; *Floyd* v. *Taylor*, 12 Ired. Eq. (N. C.) 475; *Dayton* v. *Newman*, 19 Pa. St. 194.

Mr. R. N. BOTSFORD, for the appellees:

The proof fails to show any intent to defraud existing creditors. At the time of these conveyances there was no indebt-

edness, no pending litigation, and not even the expectancy of a suit. Even if the grantor was indebted at the time, or contingently liable, yet if he retained sufficient property to pay his present or contingent liabilities, he could lawfully make this conveyance. *Moritz* v. *Hoffman*, 35 Ill. 553; *Gridley* v. *Watson*, 53 id. 186; *Mathews* v. *Jordan*, 88 id. 602; *Merrill* v. *Johnson*, 96 id. 249; *Union Ins. Co.* v. *Spaids*, 99 id. 249.

Subsequent creditors can not impeach such a conveyance. *Ward* v. *Enders*, 29 Ill. 519; *Mixell* v. *Lutz*, 34 id. 382; *Sweeny* v. *Damron*, 47 id. 450; *Pratt* v. *Myers*, 56 id. 23; *Jackson* v. *Miner*, 101 id. 550; *Lucas* v. *Lucas*, 103 id. 121; *Tunison* v. *Chamblin*, 88 id. 378.

The deeds which are claimed to have reinvested the title were executed, and were not to be delivered except on a contingency, which never happened. They passed no title. *Stone* v. *Duvall*, 77 Ill. 475; *Dickerson* v. *Merriman*, 100 id. 342; *Wormly* v. *Wormly*, 98 id. 544; *Wiggins* v. *Lusk*, 12 id. 132; *Stiles* v. *Probst*, 69 id. 382; *Benneson* v. *Aiken*, 102 id. 284.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case is the ordinary creditor's bill, and was brought by John S. Durand to subject the lands described in the bill to the payment of a judgment which complainant recovered against Henry Weightman, since deceased. The title to these lands is now alleged to be in Henrietta Weightman, who is made defendant herein. It is conceded Henry Weightman was the owner of these lands, and that on the 13th day of October, 1873, he conveyed the same to his wife, Henrietta Weightman. No money or other valuable consideration was paid by the grantee, or any one else, to the grantor for the making of the deed. It is alleged the conveyance to defendant was fraudulent, not only as to existing creditors of the grantor, but as to subsequent creditors, of

whom complainant is one. The answers of defendants are not under oath, but contain a general denial of all the allegations of the bill on which the right to relief is predicated, and assert the good faith of the transaction; that the conveyance to defendant was made with a view to settle the property on her, and was made at a time when the grantor was not indebted to any one. Replications were filed to the answers of defendants, and the cause was submitted on the pleadings and proofs. The circuit court dismissed the bill for want of equity. That decree was affirmed in the Appellate Court, and the cause is to be heard in this court on the appeal of complainant.

The bill is framed on the theory the conveyance of the lands to defendant by her husband was colorable, the grantor reserving to himself a secret interest in the property, and hence fraudulent as to existing and subsequent creditors. But that hypothesis is not as well sustained as is the theory of the defence that the conveyance was a voluntary settlement of the property upon defendant, and was made at a time when her husband could make such a settlement upon her without injury to any creditors or any one else. If it was a voluntary settlement of the property upon defendant, it must be conceded it could only be assailed by existing creditors. Subsequent creditors would have no right to complain. A party out of debt can make a settlement of his property, or any portion of it, on whom he pleases, if done in good faith. Any one dealing with him after such settlement is made a matter of record, would have no right to assail it, or say it was fraudulent as to him. It does not appear, at the time of the conveyance of the property to defendant, the grantor was indebted to any one. Before the making of the deed to his wife, he had made a contract with Squire & Bro. concerning a quantity of barley. The better evidence seems to be, the deed to defendant was made before any controversy arose with Squire & Bro. Evidence given

tends most strongly to show the barley was in the stacks when the deed was made and delivered. Afterwards a controversy did arise, growing out of the failure of the seller to deliver the barley under the alleged contract. The deed to defendant was made on the 13th day of October, 1873, and was recorded on the 6th day of November. No suit was commenced by Squire & Bro. against the grantor until in January, 1874. It does not appear any judgment was ever rendered in the case. It must have been adjusted in some way by the parties. But be that as it may, if a cause of action existed in favor of Squire & Bro. at the date of making the deed, the claim did not exceed $1000, and it is fully proven the grantor retained in his possession personal property amply sufficient to pay more than that amount. It must be conceded there were, and are, no antecedent creditors to complain. As to this fact in the case no question is made.

Nor is there any warrant in the evidence for assuming the deed was made as a device adopted by the grantor to avoid the payment of future indebtedness. It does not appear he has since contracted any indebtedness, except what may be due to complainant, barring a few sums insignificant in amount. It was certainly not then anticipated he would become indebted to complainant. That indebtedness was not even contracted until nearly three years after the making of the deed. It arose in this way: On or about the 18th day of January, 1876, Henry Weightman and complainant became sureties for Charles H. Parks on a note to George D. Kenson. Parks became insolvent, and failed to pay the note. Afterwards, judgment was rendered on it in favor of the payee and against all the makers. That judgment complainant was compelled to, and did, pay in full, with the accumulated interest and costs. Subsequently he took from Henry Weightman his note, payable to himself, for one-half of the amount he had paid to satisfy the judgment and costs. It was on that note complainant obtained the judgment

against Henry Weightman, on the 12th day of December, 1878, which he now seeks by his bill to have paid out of the lands conveyed to defendant.

Treating the conveyance of the lands to defendant as having been made in good faith by her husband, as a voluntary settlement of the property upon her for her future maintenance, the lands can not be subjected to the payment of complainant's judgment. All the evidence there is that tends to impeach the fairness of the transaction, consists wholly of statements made by the grantor, and most of them were made after the execution and delivery of the deed to defendant, to persons having no interest in the matter. As a general rule, a grantor, after he has made and delivered his deed, will not be permitted to disparage his grantee's title by subsequent declarations, made in the absence of the grantee. But conceding the evidence given in this case was proper to be considered, it is not of a very satisfactory character. At most it consists of casual conversations between the grantor and strangers to the transaction. His statements were not reproduced until many years after they were uttered, and not until after his death. Of course there was then no opportunity to obtain his version of the conversations detailed. Crediting all the witnesses with the utmost candor, as ought to be done, the value of their testimony is greatly weakened by the lapse of time, the imperfect understanding in the first instance as to what was in fact said, and most of all on account of the death of the party whose statements are given, in consequence of which his own version of the conversations can not now be obtained. If living, it might be the grantor could explain many things, consistently with the utmost fairness of the transaction, that are now insisted tend to impeach it. On the other hand, the testimony given for the defence sustains the good faith of the entire transaction,—that the conveyance to defendant was to settle the

property on her, that she might enjoy it to her sole use in case of the death of her husband, who was then in failing health.   If done in good faith, as the evidence warrants the belief it was, such a provision for the wife has the sanction of the law, as being induced by a provident forethought on the part of the husband.

Stress is laid on the fact it appears that afterwards, perhaps in 1877, defendant conveyed these lands to her son, and he conveyed the same to his father, Henry Weightman. The bill sets forth no such fact as a ground of relief.   But waiving that objection, it is clearly shown by the testimony of defendant that she took the deeds from the office of the scrivener, where they had been prepared and acknowledged; that neither of them was ever delivered either to her son or to her husband, and that it was expressly understood such deeds were not to be delivered unless she died before her husband. As she has survived her husband, the contingency on which the deeds were to be delivered can never happen.   Her testimony in this respect is wholly uncontradicted by anything in the record, and no reason is shown why it should not be received as the truth of the case.   As the deeds were never delivered to the grantees, or to any one for them, and as the contingency on which they were to be delivered can never happen, it follows the deeds never took effect so as to vest the title to the property in the grantees, or either of them.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*